IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DOMINIQUE POWELL & WALTER GRAFER, both individually and on behalf of all similarly situated individuals,<br><br>Plaintiffs,<br><br>v.<br><br>UPS SUPPLY CHAIN SOLUTIONS, INC., a Delaware corporation,<br><br>Defendant. | Case No. _____ |

NOTICE OF REMOVAL

**PLEASE TAKE NOTICE,** pursuant to 28 U.S.C. §§1332, 1441, 1446, and 1453, that Defendant UPS Supply Chain Solutions, Inc. ("Defendant") hereby removes this action from the Circuit Court of the Eighteenth Judicial Circuit, DuPage County, Illinois, to the United States District Court for the Northern District of Illinois. As grounds for removal, Defendant states as follows:

**I.      INTRODUCTION**

1. On March 17, 2022, Plaintiffs Dominique Powell ("Powell") and Walter Grafer ("Grafer") (collectively referred to as "Plaintiffs") filed a class action complaint in the Circuit Court of the Eighteenth Judicial Circuit, DuPage County, Illinois under the same caption as above and bearing case number 2022LA000264 (the "Complaint"). A copy of the Complaint is attached as Exhibit A.

2. Plaintiffs' Complaint alleges that Defendant violated the Illinois Biometric Information Privacy Act, 740 ILCS 14/1 *et seq.*, ("BIPA" or the "Act") by utilizing a time tracking device that required individuals to scan a biometric identifier (facial geometry) in order to clock

1

in and out and: (i) failing to maintain a retention policy that specifies the guidelines for retention and deletion of individual biometric information (740 ILCS 14/15(a)); (ii) failing to provide the requisite notice to individuals and obtaining a release from said individuals prior to collecting, storing and using their biometric information (740 ILCS 14/15(b)); and (iii) transferring individual biometric information to third party data storage and payroll vendors without obtaining the requisite consent (740 ILCS 14/15(d)). (Complaint, ¶¶ 2, 5, 18-21).

       3.       On March 22, 2022, Defendant was served with a copy of Plaintiffs' Complaint and Summons. A copy of the Service of Process Transmittal and Summons served on Defendant is attached as Exhibit B.

## II. PROCEDURAL REQUIREMENTS

       4.       This Notice of Removal is timely pursuant to 28 U.S.C. §1446(b) because it is filed within thirty (30) days of Defendant being served with the Complaint. *See Murphy Bros., Inc. v. Michetti Pipe Stringing,* Inc., 526 U.S. 344, 354-56 (1999) (stating that notice of removal is timely under 28 U.S.C. §1446(b) if filed within 30 days after service of the complaint).

       5.       No prior application for the same or similar relief has been made to this or to any other court.

       6.       Venue is proper. Pursuant to 28 U.S.C. §93(a) and 28 U.S.C. §1441, this cause may be removed from the Circuit Court of the Eighteenth Judicial Circuit, DuPage County, Illinois to the United States District Court for the Northern District of Illinois, as the action is pending within this district.

       7.       Pursuant to 28 U.S.C. §1446(a), copies of all process, pleadings and orders served upon Defendant are attached hereto.

       8.       Pursuant to 28 U.S.C. §1446(d), Defendant will promptly serve written notice of this Notice of Removal on counsel for Plaintiffs and file the same with the Clerk of the Circuit

Case: 1:22-cv-02085 Document #: 1 Filed: 04/21/22 Page 2 of 10 PageID #:2

2

Court for the Eighteenth Judicial Circuit, DuPage County, Illinois, in accordance with 28 U.S.C. §1446(d).

### III. REMOVAL BASED ON DIVERSITY JURISDICTION

9. Removal is proper pursuant to 28 U.S.C. §1332 (a) because this case involves a civil action between citizens of different states and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

#### A. Complete Diversity

10. Complete diversity of citizenship exists between Plaintiffs and Defendant both at the time the Complaint was filed and at the time that this Notice of Removal is filed.

11. Powell was an Illinois citizen both at the time of the filing of the Complaint and upon the filing of the Notice of Removal. (Complaint, ¶ 10).

12. Grafer was an Illinois citizen both at the time of the filing of the Complaint and upon the filing of the Notice of Removal. (Complaint, ¶ 11).

13. At all relevant times for purposes of this removal, Defendant UPS Supply Chain Solutions, Inc. ("UPS-SCS") was and is a Delaware corporation with its principal place of business located at 12380 Morris Road, Alpharetta, GA, 30005. Pursuant to 28 U.S.C. §1332(c)(1), UPS-SCS is a citizen of Delaware and Georgia. (Declaration of Brent McColl , ¶ 5, attached as Exhibit C).

14. Because Plaintiffs are citizens of Illinois and Defendant is a citizen of Delaware and Georgia, the complete-diversity requirement for removal is met. *See* 28 U.S.C. §1332(a)(1); *Lincoln Prop. v. Roche*, 546 U.S. 81,84, 126 S.Ct. 606, 610 (2005).

**B.     The Amount in Controversy Exceeds $75,000**

15.     The amount-in-controversy requirement for diversity jurisdiction is satisfied in this case because it is clear from the face of the Complaint that the "matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs."    28 U.S.C. §1332(a).

16.     A court will generally determine the amount in controversy "by merely looking at plaintiff's state court complaint, along with the record as a whole." *Hasek v. Chrysler Corp.*, 1996 WL 48602, at *2 (N.D. Ill. Feb. 5, 1996) (citing *Gould v. Artisoft, Inc.*, 1 F. 3d 544, 547 (7th Cir. 1993), and *In re Shell Oil Co.*, 970 F. 2d 355, 356 (7th Cir. 1992) (*per curiam*)).  The Seventh Circuit requires the Court to consider the totality of the relief sought, including monetary damages, attorneys' fees, and the cost a defendant incurs in complying with injunctive relief. *See Tropp v. Westsern-Southern Life Ins. Co*, 381 F.3d 591, 595 (7th Cir. 2004).  To establish the amount in controversy threshold, a "defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014).

17.     Plaintiffs' Complaint does not allege a specific dollar amount Plaintiffs are seeking in damages, but instead seeks "statutory damages of $5,000, for *each* willful and/or reckless violation of BIPA" and "statutory damages of $1,000 for *each* negligent violation of BIPA." (Complaint, PRAYER FOR RELIEF, ¶¶ d–e) (emphasis added).  Plaintiffs also seek injunctive relief, equitable relief, and reasonable attorneys' fees and costs. *Id.*, at c, f.

18.     Although no court has yet addressed exactly what constitutes a "violation" under BIPA, the Complaint alleges that "*each instance* that Plaintiffs and other Class members were required to scan their facial geometry, Defendant captured, collected, stored, and/or used Plaintiffs' and the other Class members' biometric identifiers or biometric information without valid consent and without complying with and, thus, in violation of BIPA." (Complaint, ¶ 37)

4

(emphasis added). Plaintiff further alleges Defendant's alleged violations were "knowing and willful, or at least in reckless disregard of the statutory requirements." (Complaint, ¶ 41).

19. Plaintiffs' Complaint does not specify how many violations allegedly occurred for each Plaintiff under this theory of a BIPA violation occurring each time a plaintiff's facial geometry was allegedly scanned for purposes of clocking in or out without valid notice and consent. Nevertheless, the face of the Complaint makes clear that the number of alleged violations would make the amount in controversy for each plaintiff well in excess of $75,000.

20. Specifically, the Complaint alleges that the biometric timeclock was in use during both plaintiff's periods of employment, which was October 2017 through April 2020 for Grafer and December 2020 through July 2021 for Powell. (Complaint, ¶¶ 16-18). As each plaintiff would have clocked in or out at least two times per workday, the Complaint is alleging hundreds of alleged instances of each plaintiff scanning his or her facial geometry to clock in or out without the alleged requisite notice and consent. Stated another way, each plaintiff alleges that he/she had his/her biometric information collected, stored and used hundreds of times.

21. If each plaintiff is entitled to a $1,000 or $5,000 damage award for each such scan, each plaintiff has alleged an amount in controversy well in excess of $75,000. Indeed, it would only take 15 such scans to meet the $75,000 threshold (15 x $5,000).[1] *See Peatry v. Bimbo Bakeries USA, Inc.*, 393 F. Supp. 3d 766, 770 (N.D. Ill. 2019) (denying remand on the basis that it is not "legally impossible" for plaintiff to recover $5,000 per fingerprint scan."). This number does not take into account Plaintiffs' request for injunctive relief, attorneys' fees and costs, among

---

[1] It is appropriate to use $5,000 for willful violations of BIPA when calculating the amount in controversy for a BIPA action, not the $1,000 for negligent violations of BIPA. *See, e.g., Geschke v. Air Force Ass'n*, 425 F.3d 337, 342 (7th Cir. 2005) (amount in controversy satisfied when, on the face of the complaint, it is not "legally impossible at the outset" for the plaintiff to recover more than the jurisdictional threshold).

other things, which will necessarily add to that amount in controversy total for purposes of ascertaining whether the jurisdictional threshold has been meet.

22. As the damages each plaintiff is seeking are easily in excess of $75,000, the amount in controversy requirement is satisfied.

## IV. REMOVAL UNDER THE CLASS ACTION FAIRNESS ACT

23. This Court has original jurisdiction based on the Class Action Fairness Act ("CAFA"), 28 U.S.C. §1332(d), which expands jurisdiction for diversity class actions by creating federal subject matter jurisdiction if: (1) the class has 100 or more class members; (2) at least one class member is diverse from at least one defendant ("minimal diversity"); and (3) there is more than $5,000,000, exclusive of interest and costs, in controversy in the aggregate. *See* 28 U.S.C. §1332(d); *Roppo v. Travelers Commercial Ins. Co.*, 869 F.3d 568, 578 (7th Cir. 2017).

24. The "party seeking removal does not need to establish what damages the plaintiff will recover, but only how much is *in controversy* between the parties." *Roppo*, 849 F. 3d at 579 (citing *Spivey v. Vertrue, Inc.*, 528 F.3d 982, 986 (7th Cir. 2008). Further the "removing defendant need not confess liability in order to show that the controversy exceeds the threshold." *Id.*

### A. Minimal Diversity

25. As stated previously, Plaintiffs are citizens of Illinois, and Defendant is a citizen of Delaware and Georgia. Therefore, the minimal-diversity requirement for removal under CAFA is met. *See* 28 U.S.C. § 1332(d)(2)(A).

### B. Numerosity

26. The Complaint defines the putative class to include:

> All individuals whose biometrics were captured, collected, stored, used, transmitted, or disseminated by or on behalf of Defendant within the state of Illinois at any time within the applicable limitations period.

27. While Plaintiffs do not identify a specific number of proposed class members, the Complaint alleges that there are "scores, if not hundreds of members of the Class." (Complaint, ¶ 26). *See Gubala v. CVS Pharmacy, Inc.*, 2016 WL 1019794, at *2 (N.D. Ill. Mar. 15, 2016) (finding that a general description of the size of the class satisfied the numerosity requirement under CAFA).

28. Accordingly, based on the face of the Complaint, there is a plausible basis for assuming more than 100 putative class members. *See* 28 U.S.C. §1332(d)(5)(B).

C. **The Aggregate Amount in Controversy Exceeds $5 Million**

29. Pursuant to 28 U.S.C. §1332(d)(6), "[i]n any class action, the claims of the individual class members shall be aggregated to determine whether the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs."

30. As discussed, *supra*, the Complaint alleges that "*each instance* that Plaintiffs and other Class members were required to scan their facial geometry, Defendant captured, collected, stored, and/or used Plaintiffs' and the other Class members' biometric identifiers or biometric information without valid consent and without complying with and, thus, in violation of BIPA." (Complaint, ¶ 37) (emphasis added).

31. With paragraph 26 of the Complaint alleging that there are "hundreds" of members of the proposed class, the Complaint alleges hundreds of violations of BIPA, each one potentially subject to a $5,000 damage award. Assuming, *arguendo*, that there is a class of only 100 individuals (which Plaintiffs contend there are far more), then each individual need only have their facial geometry scanned ten (10) times to meet the $5,000,000 CAFA threshold (10 x $5,000 x 100). *See Fox v. Dakkota Integrated Sys., LLC*, 2020 WL 8409683, at *3 (N.D. Ill. Jan. 24, 2020) (finding that "it is not legally impossible for [plaintiff] to recover $5,000 per scan, thereby meeting the requisite amount in controversy for CAFA jurisdiction."); *see also Peatry*, 393 F.Supp3d at

7

769–70. It is more than plausible that each class member had their facial geometry scanned significantly more than 10 times if the biometric technology was used for daily timekeeping purposes and each of the named plaintiffs worked for years or months at this facility (as the Complaint alleges).[2]

32. Consequently, the aggregate amount in controversy in this matter exceeds the $5,000,000 amount-in-controversy requirement of 28 U.S.C. §1332(d).

V. **CONCLUSION**

33. As this case involves complete diversity, and the amount in controversy between each individual plaintiff and Defendant exceeds $75,000, this Court has subject matter jurisdiction pursuant to 28 U.S.C. §1332(a). Original subject matter jurisdiction likewise exists under 28 U.S.C. §1332(d)(2)(A) because the minimal diversity requirement is met, the Complaint alleges more than 100 putative class members, and the aggregate amount in controversy is in excess of $5,000,000.

---

[2] Plaintiffs will also likely argue that BIPA can be violated in multiple ways for each individual and that the individual is entitled to $5,000 for each such violation. Stated another way, each plaintiff will likely argue that he/she is entitled to $5,000 for the alleged failure to maintain a publicly available retention policy, $5,000 for collecting, storing and using biometric information without the requisite notice and consent and $5,000 for each alleged transfer of biometric information to a third party. Under this theory, in a class of 100 individuals, each individual need only have had their facial geometry scanned approximately 3-4 times in order to meet the $5,000,000 threshold.

WHEREFORE, pursuant to 28 U.S.C. §§1332, 1441, 1446, and 1453, Defendant UPS Supply Chain Solutions, Inc. hereby removes the above-captioned action from the Eighteenth Judicial Circuit, DuPage County, Illinois, to the United States District Court for the Northern District of Illinois.

Dated: April 21, 2022

Respectfully submitted,

**UPS SUPPLY CHAIN SOLUTIONS, INC.**

By: /s/ Gary R. Clark
    One of its attorneys

Gary R. Clark (ARDC #6271092)
Kaitlin Phillips (ARDC #6333190)
QUARLES & BRADY LLP
300 North LaSalle Street, Suite 4000
Chicago, Illinois 60654
(312) 715-5000 | (312) 715-5155 (fax)
gary.clark@quarles.com
kaitlin.phillips@quarles.com

## **CERTIFICATE OF SERVICE**

I, Gary R. Clark, an attorney of record, hereby certify that on April 21, 2022, I caused the foregoing **Notice of Removal,** to be electronically filed, and served the same on the following counsel of record via email to the address indicated:

> Timothy P. Kingsbury
> Andrew T. Heldut
> Colin P. Buscarini
> MCGUIRE LAW P.C.
> 55 W. Wacker Drive, 9th Fl.
> Chicago, IL 60601
> tkingsbury@mcgpc.com
> aheldut@mcgpc.com
> cbuscarini@mcgpc.com

/s/ Gary R. Clark

QB\73600696.1